**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO.: 3:19cr303 (SRU) |
| vs. | : | |
| SIMON HESSLER | : | JULY 27, 2020 |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I. INTRODUCTION**

The defendant, Simon Hessler, hereby submits this sentencing memorandum in accordance with Rule 32(o) of the Local Rules of Criminal Procedure in advance of his sentencing currently scheduled for August 5, 2020 at 10:00 A.M.

**II. POSTURAL PROCEDURE AND GUIDELINES APPLICATION**

On December 11, 2019, Simon Hessler entered a guilty plea to Count 1 of an information charging him with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). Currently, Mr. Hessler's presentence report prepared by the Office of United States Probation places him in a Criminal History Category I (PSR ¶ 42). Officers Collette and Harte have calculated Mr. Hessler's total offense level at 41. (PSR ¶ 40). With a corresponding Criminal History Score of 1, Mr. Hessler's advisory sentencing guidelines range is 324-360 months.

1

(PSR ¶ 79).

### III. LEGAL DISCUSSION

In determining a sentence, a Court must impose a sentence that is "sufficient, but not greater than necessary" to establish the purposes of sentencing contained in 18 U.S.C. § 3553(a). Section 3553(a) sets forth the following factors that must be considered by a sentencing court in imposing every sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for-
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ⋯
> (5) any pertinent policy statement ⋯
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

In considering these factors, courts have held that a Judge does not need to explicitly delineate each factor and the basis of the established sentence in connection with that particular factor.

> We have imposed no similar requirement that a sentencing judge *precisely identify* either the factors set forth in § 3553(a) or specific arguments bearing on the implementation of those factors in order to comply with her duty to consider all the § 3553(a) factors along with the applicable Guidelines range.  *See id.* at 115 ("[A] sentencing judge would commit a statutory error in violation of section 3553(a) if the judge failed to 'consider' the applicable Guidelines range (or arguably applicable ranges) as well as the other factors listed in section 3553(a)."). Consideration of the § 3553(a) factors is not a cut-and-dried process of fact finding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts.  That context calls for us to refrain from imposing any rigorous requirement of specific articulation by the sentencing judge. *United States v. Fernandez*, 443 F.3d. 19, 29 (2nd Cir. 2006), *cert. denied*., --U.S.--127 S.Ct 192 (2006).

Mr. Hessler knows that this Court is very familiar with the legal standards that are applied by the Court at sentencing and asks that the Court consider these principles along with the criteria set forth under 18 U.S.C. § 3553(a), as well as the case of *United States v. Crosby,* 397 F.3d 103 (2nd Cir. 2005), and its progeny.

In considering these factors, and in accordance with the plea agreement reached with the United States Attorney's Office, counsel asks the Court to impose a sentence of 347 months

3

imprisonment, as this sentence will account for jail credit dating back to the time Mr. Hessler was initially arrested by state authorities on November 13, 2018[1], until the date of December 17, 2019, when his bond was reduced in state court and his custody was officially transferred to the federal authorities.

## IV. HISTORY AND CHARACTERISTICS OF DEFENDANT

Mr. Hessler was born in 1972, in Liestal, Switzerland. Today, he is 48 years old. He was adopted when he was four months old. Sadly, his mother, Marie-Claude died on March 18, 2020, from cancer. (PSR ¶ 47). Due to his incarceration, Mr. Hessler was unable to be present with her and say his final goodbyes. By all accounts, Mr. Hessler was raised in a very loving and nurturing household, having been instilled with proper moral values. The family was affluent and enjoyed many vacations together. His family has been a constant source of support for him, not only during the pendency of this case, but throughout his entire life. However, despite his family's support and love, Mr. Hessler's life has not been without trauma.

When Mr. Hessler was just seven years old, he was rummaging through his mother's closet, and discovered his adoption paperwork. (PSR ¶ 49.) He was understandably surprised

---

[1] The government does not oppose the request for jail credit. (See page 7 of the defendant's plea agreement.)

by his discovery yet did not discuss it with his parents as he felt he would hurt them by his asking questions. Even today, he still feels uncomfortable talking about the adoption with his father, as he feels he is being disrespectful.

Due to his father's employment, the family moved quite frequently to several different countries. (PSR ¶ 48). Although French was spoken in the home, as a young child, Mr. Hessler spoke three languages. Due to the moves and the different languages spoken in the various countries in which he was residing, school was often difficult for Mr. Hessler and he struggled with his studies. Additionally, due to the frequent moves, he was never able to form and maintain significant friendships and often felt alone.

When Mr. Hessler was 13 years old, he was attending a summer camp in France. One day while at the camp, he was surrounded by a group of campers and counselors and was raped. He never told anyone about this assault and "buried it deep inside." (PSR ¶ 67). The full effects of this tragic assault will probably never be known but are an important fact for the Court to take into consideration in terms of Mr. Hessler's history and characteristics.

When Simon was in high school, the family moved to the United States and lived in New York. Mr. Hessler liked the United States and told his parents he wanted to attend the University of Hartford. His parents allowed him to stay and attend school there, while the

family returned to France. Unfortunately, school did not go as planned, and Simon was expelled due to his poor grades. (PSR ¶ 69). Too embarrassed to tell his parents, Simon remained in the United States and lied to his parents about being in school.

In 2002, Mr. Hessler met his wife through an employee at his hotel. They were married less than a year later. They had one biological daughter together, and Mr. Hessler also helped raised his wife's daughter from another marriage. Mr. Hessler was involved in the community and obtained his EMS license, a source of great pride for him. Unfortunately, one day while lifting a patient, Mr. Hessler fell and hurt his back. His wife referred him to a doctor for his pain. This is where Mr. Hessler's downward spiral began. He began using and abusing prescription medication to control the pain. At the same time, his hotel project began failing. Everything seemed to be out of control.

When Mr. Hessler was arrested his family was shocked. In a letter to the Court, Pierre Hessler expresses how he felt upon learning of his son's arrest:

> Simon's crimes have stunned my wife Marie-Claude and me. They were impossible to imagine, let alone understand, because they contradicted everything we knew and felt about Simon. Despite that, we immediately decided to stand by him, our son. His sister, Laurence and her children Lucas, Fanny, and Clara reacted the same way.

**(See Exhibit 1, letter of support from Pierre Hessler).**

Mr. Hessler's sister, Laurence, also expresses her support for her brother and noted how

remorseful he is for his conduct.  "During my first visit to Simon in prison in September 2019 he retrospectively and in his right mind expressed enormous regrets; he cannot explain how he could do what he did – it is so clearly the opposite of his normal self." **(See Exhibit 2, letter of support from Laurence Hessler).**

## V.  LEGAL DISCUSSION AND GROUNDS IN SUPPORT OF A SENTENCE OF 347 MONTHS

### A. Simon has showed extreme remorse for his crime.

Simply stated, the crime for which Mr. Hessler is convicted of in this case is heinous. For his crime, he is facing what amounts to be a life sentence, the most severe he can possibly receive under the statute.  Although Mr. Hessler is prohibited under the plea agreement from arguing for a sentence below 347 months, counsel would like to bring to the Court's attention certain facts about this case.

Although Mr. Hessler has been incarcerated during the pendency of this case, he did have an opportunity to meet with Dr. Leslie Lothstein on several occasions at the Cheshire Correctional Institution.  Dr. Lothstein prepared two reports based on his meetings and findings with Mr. Hessler.  **(See Exhibits 3 and 4 attached hereto).**  As these reports are medical records and protected under HIPPA, counsel requested that they be filed under seal. The combination of the reports addresses a vast historical background of Mr. Hessler.  Dr. Lothstein even notes the difference in Mr. Hessler's mental status between their first and second visits in his second report.  **(See Exhibit 4).**  Dr. Lothstein expresses that Mr. Hessler is now free from

7

the illicit pain medications he was using and abusing including, Oxycontin, Vicodin, and Percocet, and now stable having been prescribed Zoloft (a Selective Serotonin Reuptake Inhibitor) and Vistaril (an antihistamine having sedative properties and also affecting serotonin and acetylcholine level and actions).  **(See Exhibit 4 page _____).**  The road since his arrest, has been extremely difficult and at times traumatizing for Mr. Hessler.  This is not only because of the abuse he has suffered in prison, but mainly because of his realization, understanding, and acknowledgement of the crimes he committed.  In a personal statement to the Court, Mr. Hessler writes:

> I acknowledge my horrific actions, deeds, and decisions.  I would not be honest if I told you I recall them clearly.  I do not.  At the time of my arrest, I was addicted to many prescription drugs, including Vicodin, Percocet, and Oxycodone which I took in excess of 200 mg per day.  My addiction began when I was prescribed pain medication while waiting for a bilateral hernia operation which was performed approximately 2 years before I was arrested.
>
> Throughout my childhood, adolescence, and adulthood I struggled with non-diagnosed bipolar disorder, anxiety, post traumatic stress disorder, childhood rape, learning disabilities, physical brain abnormalities and numerous physical and psychiatric issues.
>
> As I began to read my presentence report I became disgusted. I hated the person described therein – that person is a monster.  That person was me.  It is hard to write, hard to admit.
>
> I am ashamed of what I did . . .

 **(See statement of Simon Hessler attached as Exhibit 5).**

8

### B. Mr. Hessler's abuse in prison.

It is certainly no secret that criminal defendants facing or convicted of sex crimes face an extremely hard incarceration, not only due to abuse from other inmates, but from the guards who are responsible for their well-being. In fact, this has already happened to Mr. Hessler. Every trip to court is terrifying due to the abuse he suffers from other inmates while being transported to court. He also was attacked by a guard at the Cheshire Correctional Institution. For this attack, which happened to be caught on camera, the guard was reprimanded. However, the abuse from this guard has not stopped, and most recently another inmate at the Cheshire Correctional Institution informed Mr. Hessler that this guard asked him to "take Hessler out." Mr. Hessler has been nothing but respectful and compliant while incarcerated. He has received no disciplinary infractions. (PSR ¶ 4). This is one of several reasons why Mr. Hessler would prefer to be sentenced by video teleconference and not have to endure another trip to court. It is terrible to think that a defendant needs to be afraid to come to court to face his own charges.

In his statement to the Court, Mr. Hessler details the horrors he faces daily since his arrest. "I simply want to be in a safe place where I can receive proper medical and physical treatment. My treatment since my arrest has been a constant wave of emotional, mental, and physical abuse. I do not wish what has been inflicted upon me to occur to anyone. I guess I deserve it . . ." **(See Exhibit 5).**

He goes on to detail some of the specific incidents he has suffered in prison, including being called names like "Hessler the Molester," "Dungeon Master", etc. Some of this name

calling is even done by the guards over the loudspeaker. Mr. Hessler has been denied food, had pornographic pictures planted in his cell by a guard, been assaulted by other inmates and guards, and been told by guards to "kill himself."

To think that the very persons entrusted with his care would be so mean and criminal is unimaginable. Mr. Hessler knows what he did, and he has already accepted responsibility for his actions. He is prepared to serve his sentence, but just asks one thing, to be in a safe environment.

**C. The Court must impose a sentence that is "sufficient, but not greater than necessary."**

The parsimony clause contains very important language that the Court is required to consider. Plainly, if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia,* 470 F. 3d 137, 142 (2nd Cir. 2006).

After considering the factors contained in 18 U.S.C. § 3553(a), the Court can readily determine that a sentence of 347 months can still achieve the factors contained therein, and still be "sufficient, but not greater than necessary."

**VI. CONCLUSION**

There is no question that the offense Mr. Hessler committed is egregious. He is

extremely remorseful for his actions and, in fact, found it difficult to read his own presentence report. Despite this, he is capable of being rehabilitated with the proper mental health and substance abuse treatment. In fact, now that he is sober, he is a different person.

    For the foregoing reasons, Mr. Hessler respectfully asks the Court to impose a sentence of 347 months imprisonment.

    Defense counsel will address the Court further at sentencing.

RESPECTFULLY SUBMITTED

DEFENDANT,
SIMON HESSLER

BY  /s/  *Bethany L. Phillips*
    BETHANY L. PHILLIPS
    BUTLER, NORRIS & GOLD
    254 Prospect Avenue
    Hartford, CT  06106
    Tel.: (860) 236-6951
    Fax.:(860) 236-5263
    Federal Bar No.: ct19802
    bphillips@bnglaw.com

**CERTIFICATION**

I hereby certify that on the above date, a copy of the foregoing document was filed electronically and sent by first class mail, postage prepaid, to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

　　　　　　　　　　　　　　　　　　　　　　/s/   *Bethany L. Phillips*
　　　　　　　　　　　　　　　　　　　　Bethany L. Phillips, Esq.
　　　　　　　　　　　　　　　　　　　　Federal Bar No. ct 19802